The ChahceIíLOE.
The decision of the questions submitted in this cause involves the construction of the will of James Shreve, deceased. The whole case turns upon the intention of the testator as to what funds should pay ais debts, and in what order they should be appropriated for that purpose. The testator left four daughters, two grandsons, children of a deceased son, his deceased son’s widow, and Ms own wife, the devisees of all his property. He first directs his executors to pay off and discharge all his debts. He gives to his wife, during her natural ice, the sole and exclusive use of all his plate, books, household goods, and furniture; and he gives to her absolutely all his groceries, meat, and provision in his house at the time of his death. To his daughter in law, he devises the sole and exclusive use and occupancy, and all the rents and profits of the Biddle farm, to be held and enjoyed by her from the time of his decease until the twenty-fifth day of March immediately preceding the time when his grandson, James Shreve, should arrive at the age of twenty-one years, with the proviso and upon the condition that his said daughter in law should, within three months after his decease, execute and deliver to his executors a full and absolute release and discharge of all claims and demands she might have against his estate. To his two grandsons, from the said twenty-fifth dayof March immediately preceding his grandson’s (James) arriving to the age of twenty-one, he gives the Biddle farm, as joint tenants, with remainder to their issue in fee, and in default of issue, to the right heirs of the testator. He also gives to his grandsons one third part of his pine lands and cedar swamp. To his four daughters, the testator gives his homestead farm and two-thirds of his pine lands and cedar swamps, with an estate of the same character as *388 that devised to his grandsons. He then devises and bequeaths to his four daughters, to their heirs and assigns for ever, all the rest, residue, and remainder of his estate, wheresoever the same may he found, to he equally divided among them share and share alike, subject only to the payment of all just claims against him on note, or hook of account, funeral charges, testamentary and incidental expenses, and commissions. The testator appointed two of his daughters and his son in law to execute his will. They, together with the other daughters of the testator, have filed this hill against the two grandsons, who are infants, and who appear and defend by their guardian. The guardian answered the bill, and the cause comes up on final hearing upon the pleadings and proofs taken.
The testator left one specialty debt, which was a bond debt, the principal of which was $6000, and which was due to his daughter in law. She refused to comply with the proviso upon which the devise was made to her, under the will, of the Biddle farm. The devise to her, therefore, does not take effect, and this debt, which she refused to release, must be paid out of the estate. The other debts were considerable. All the personal estate which passed under the residuary clause of the will has been appropriated to pay the simple contract debts, and there is a deficiency of about nineteen hundred dollars. There is no other personal estate of the testator, except the specific legacies which he bequeathed to his widow, appraised and valued at eight hundred and seventy-seven dollars. Out of what funds are the remaining simple contract debts to be paid, and the specialty debt before referred to?
It is important, in the first place, to ascertain the chaacter of the estate of the testator still unappropriated. Ve have the specific legacies to the testator’s wife, the specific devises to his daughters, the specific devises to his grandsons, and the estate in the Biddle farm up to the twenty-fifth day of March immediately preceding the- *389 time when the testator's grandson, James Shreve, shall arrive at the age of twenty-one years. Who is entitled to this estate in the Biddle farm until the period when the grandsons take it ? It was devised, by the testator, to his daughter in law, upon the express condition that she would execute and deliver to his executors a full and absolute release and discharge of all claims and demands she might have against his estate. She has refused to do this. The estate passed by the residuary clause of the will, by which the testator gave to his four daughters, and to their heirs and assigns for ever, all the rest, residue, and remainder of his estate, wheresoever the same may Tbo found. A residuary disposition will carry all the contingent or reversionary interest which a specific devise shall leave undisposed of. Generally speaking, where a specific devise fails on account of its being void ab initio, the property so devised will go to the heir at law. But if the specific devise dispose only of a partial or contingent interest in the lands, leaving an ulterior or alternate interest undisposed of, that would, in the absence of disposition, descend to the heir. Such undisposed of interest will pass by a general residuary clause. Powell on Devises 105-6.
In Doe, on the demise of Wells and, others, against Scott and another (3 Maule & Sel. Rep. 300) the testator devised all his lands at II. to J. M., his heir at law, his heirs and assigns for ever, provided that he or his heirs did, within six months after his decease, assure to R. M. and his children certain copyhold premises ; and in default of such assurance, the testator gave the premises to II. M. for life, and from and after his decease to his children living at the time of his decease, their heirs and assigns for ever, as tenants in common: J. M. and R. M. died unmarried in the testator’s lifetime. It was held that this was not a lapsed devise of the whole interest, so as to belong to the heir at law of the devisor, hut by reason of the contingent interest which remained undisposed of, if J, M, *390 should not assure, and R. M. should die without children, the residuary devisees to whom was devised all the rest of the devisor’s lands, wheresoever situate, were entitled. The undisposed of interest, then, in the Biddle farm passed under the residuary clause to the testator’s daughters. It is a specific devise to them, as much so as is the devise of the homestead farm. Every residuary devise of real estate, however general the terms of it, is in its nature specific. Powell on Devises 103; Howe v. Earl of Dartmouth, 7 Ves. 147; Broome v. Monk, 10 Ves. 605; Hill v. Cook, 1 Ves. & Beam. 175. As this principle, as the authorities state, follows from the fact, that the devisor can only devise the land to which he is actually entitled at the time of making his will, a question might arise, how far, in New Jersey, it should he considered applicable to after acquired lands; since, by the statute of 1851, the distinction between real and personal estate in this particular is abolished. No such question, however, is involved in this case. The testator was seized and possessed of all the lands disposed of by him at the time his will was executed. The estate then in the Biddle farm, which passed under the residuary clause, is a specific devise, and must stand on the same footing- as the other devises (all being specific) as to payment of debts, unless the testator has declared his intention otherwise. Has he done so ?
As to the simple contract debts, it is admitted that the specific devises must contribute pro rata; but as to the special debt, the complainants insist that the testator has exempted the residuary estate, and that the interest in the Biddle farm, which passed with the residue, is not liable to contribution for the payment of this debt.
In the first place, the testator charges his whole estate, both real and personal, with the payment of his debts. By the first item of his will, he directs his executors to pay off and discharge all his debts. Having made his debts a burthen upon all his estate, he devises and bequeaths the residue of his estate to his daughters, *391 subject only to the payment of Ms simple contract debts. The greatest part of this property was subject to the payment of ajl the simple contract debts, as the primary fund for that object, and the rest of it, upon general principles of law, was subject to contribution with the other specific devises. 'When, therefore, the testator declared that the residuary estate should be subject only to the payment of simple contract debts, he meant to exonerate it from the burthen, which otherwise it must have borne as a common fund, of other debts. If it is not exonerated from the payment of the specialty debt, this intention of the testator will be defeated. I am of opinion, therefore, that as to the simple contract debts, the interest of the residuary devisees in the Biddle farm must contribute pro rata with the other specific devises to pay the simple contract debts; but as to the specialty debt, it is not liable to contribution. The only remaining question is, when and how the specific legacies must be appropriated ?
The general rule is, where no directions are given by the testator for the payment of his debts, specific legacies must be appropriated before real estate devised; but where the testator makes his debts a charge upon his real as well as personal estate, or upon his estate generally, the devisees and legatees must bear their respective share of the burthen pro rata; and this is the case where the testator commences his will with a general direction that Ms debts shall be paid. 2 Jarman on Wills 549 ; Irvin v. Ironmonger, 2 Russel & M. 591. As has been already observed, the testator in this case charges his whole estate with the payment of his debts. He commences his will with a general direction to his executors to pay off and discharge all his debts, as soon as can conveniently be done after his decease. The specific devises and legacies must, therefore, contribute pro rata to pay the simple contract debts.
Let a decree be made, with directions that the residuary *392 personal estate be first appropriated to pay tbe simple contract debts of tbe testator and tbe expenses of settling tbe estate; that tbe specific legacies and devises contribute pro rata to make up any deficiency required to pay these debts and expenses; and that as to specialty debts, tbe specific devises, excepting that of tbe Biddle farm, wbicb fell into tbe residue, first contribute pro rata to pay tbe specialty debts, tbe residuary devise of tbe Biddle farm being liable only in tbe event of a deficiency of all other property to pay tbe specialty debts.